32 F.3d 561
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES of America, Appellee,
v.
Kurt Alan STEIN, Defendant, Appellant.
 No. 93-1945
 United States Court of Appeals,
First Circuit.
 August 19, 1994
 
 Appeal from the United States District Court for the District of Maine [Hon. Morton A. Brody, U.S. District Judge ]
 William Maselli, by Appointment of the Court, for appellant.
 Margaret D. McGaughey, Assistant United States Attorney, with whom Jay P. McCloskey, United States Attorney, and Timothy D. Wing, Assistant United States Attorney, were on brief for the United States.
 D.Me.
 AFFIRMED.
 Before Boudin, Circuit Judge, Coffin, Senior Circuit Judge, and Pettine,* Senior District Judge.
 Per Curiam.
 
 
 1
 In September 1992, a law enforcement helicopter spotted marijuana plants growing on the property of Kurt Alan Stein in Somerset County, Maine. After a ground search revealed 172 marijuana plants growing on or near the property, Stein was charged with manufacture of marijuana, 21 U.S.C. Sec. 841(a)(1) and (b)(1)(B), and possession of marijuana with intent to distribute. 21 U.S.C. Sec. 841(a)(1) and (b)(1)(C). Pursuant to a plea agreement, Stein was allowed to plead guilty on March 1, 1993, to the lesser offense of cultivation of marijuana in excess of fifty plants. 21 U.S.C. Sec. 841(b)(1)(C).
 
 
 2
 Sentencing occurred on August 10, 1993. Based on the amount of marijuana involved, the court began with a base offense level of 26. It then enhanced Stein's base level by two based on the discovery by law enforcement officers of four firearms on Stein's property along with the marijuana, U.S.S.G. Sec. 2D1.1(b)(1), and deducted three levels after determining that Stein had accepted responsibility for his crime. U.S.S.G. Sec. 3E1.1(b). The resulting base offense level of 25, coupled with a criminal history category of I, yielded a guideline sentence range of 57 to 71 months.
 
 
 3
 Although Stein argued that a downward departure would be appropriate because his consumption of marijuana was prompted by severe physical and psychological problems, the district court rejected this contention and sentenced Stein to 57 months imprisonment. This appeal followed.
 
 
 4
 Stein's first argument on appeal is that the district court abused its discretion in failing to depart downward from the guideline range. It is well settled, however, that this court ordinarily lacks jurisdiction to review refusals to depart downward so long as the sentence imposed was within the guideline range. See, e.g., United States v. Amparo, 961 F.2d 288, 292 (1st Cir.), cert. denied, 113 S. Ct. 224 (1992); United States v. Tucker, 892 F.2d 8, 9-11 (1st Cir. 1989). An exception exists "if the record supports an inference that the sentencing court's failure to depart did not represent an exercise of fact-finding or discretion, but was instead the product of the court's miscalculation about whether it possessed the authority to depart." Amparo, 961 F.2d at 292; see also United States v. Lauzon, 938 F.2d 326, 330 (1st Cir.), cert. denied, 112 S. Ct. 450 (1991). Despite Stein's argument to the contrary, we find that the present record supports no such inference.
 
 
 5
 Stein argued in the district court that he was driven to consume marijuana by a host of physical and emotional difficulties. The presentence investigator found that Stein had suffered a wide range of severe injuries to his back, leg, face, hands, and various internal organs, most of which arose from an automobile accident in 1989. Although Stein had undergone 12 operations since the accident, he continued to experience intense headaches and was receiving Social Security disability payments at the time of his arrest. In addition, Stein suffered severe emotional depression resulting from the death of his fiancee in another auto accident that took place in 1992. Accordingly, Stein asserted that he qualified for a downward departure under U.S.S.G. Secs. 5H1.3 (Mental and Emotional Condition) and 5H1.4 (Physical Condition). Stein also claimed that the factors prompting him to use marijuana amounted to duress, U.S.S.G. Sec. 5K2.12, and entitled him to a departure under the catch-all provision of U.S.S.G. Sec. 5K2.0.
 
 
 6
 Although the district court rejected these arguments, the record leaves little doubt that the court recognized its authority to depart. The court noted that "I don't think there is any question that the court has the authority to depart," and explicitly rejected the government's argument that a departure would be forbidden under the circumstances. Instead, the court found that Stein's admittedly "tragic situation" was not the primary cause of his illegal activities, stating that "it tests the bounds of credulity to suggest that these plants, 172 plants or thereabouts, were being used primarily for personal consumption.... [T]he fact of the matter is that [Stein] was also selling, by his own admission, quantities of marijuana...."
 
 
 7
 The district court rejected Stein's duress argument on similar grounds. Although the court commented that "I don't understand the duress argument at all," and expressed the view that duress could only exist where a person is forced to commit an act by someone "with superior power or will," the court also repeated its belief that the number of plants involved and the sales by Stein undermined the credibility of the duress argument. Moreover, the court concluded its discussion by insisting that "[t]hat's not [to] say I don't have authority to depart if I found the facts differently. I do have authority to depart, but ... I'm not satisfied that the facts of this case warrant departure." Given the district court's clear recognition of its authority to depart, we have no jurisdiction to review its decision not to do so on the merits. Amparo, 961 F.2d at 292.
 
 
 8
 Stein also appeals from the district court's enhancement of his base offense level by two levels for possession of a dangerous weapon. U.S.S.G. Sec. 2D1.1(b)(1). Law enforcement officers discovered four firearms on Stein's property, at least three of which were operable and one of which was loaded. Stein does not dispute his ownership of the weapons; he asserts, however, that they were unrelated to his possession of marijuana and thus should not have been considered in computing his sentence.
 
 
 9
 We have held that, once the government shows that a weapon was possessed or present with drugs, the burden shifts to the defendant to demonstrate "the existence of special circumstances that would render it 'clearly improbable' that the weapon's presence has a connection to the narcotics trafficking." United States v. Corcimiglia, 967 F.2d 724, 728 (1st Cir. 1992). Although some connection to the drugs is required, the defendant need not be shown to have had the weapon on his person or in his immediate vicinity; rather, it is sufficient if the weapon was available to protect the defendant or the drugs. United States v. Pineda, 981 F.2d 569, 573 (1st Cir. 1992). Moreover, we review the district court's findings on this point-like other factual determinations in sentencing under the Guidelines-only for clear error. United States v. Wheelwright, 918 F.2d 226, 227-28 (1st Cir. 1990). We find no such error on the present record.
 
 
 10
 Three of Stein's four weapons were found in the same camper as a number of baggies containing marijuana. Stein also testified that he kept one of the weapons loaded and underneath his bed in order to prevent rodents from nibbling at his marijuana plants. The use of firearms to fend off woodchucks was probably not what the Sentencing Commission had in mind in drafting U.S.S.G. Sec. 2D1.1(b)(1). But the availability of a weapon suggests that it could readily have been used to protect the plants from others or to resist arrest. The district court's determination that the guns were used "to further the crime" was not clearly erroneous.
 
 
 11
 Nor does it make any difference that most of the weapons may not have been easily accessible at the time that Stein was arrested. Although Stein testified at his sentencing hearing that the guns were kept underneath "a multitude of items" in his trailer at the time of his arrest, the district court found that "it also is clear from the testimony of the defendant that the weapons were accessible for a significant period of time during which the manufacture of the marijuana took place." This is sufficient; nothing in the language or purpose of the provisions that impose the firearms enhancement require that the weapon or weapons be used or available for use at the time of arrest.
 
 
 12
 Because we have no jurisdiction to consider the district court's failure to depart downward from the guideline sentence, and because that court's enhancement of Stein's offense level for possession of a dangerous weapon was not clearly erroneous, we affirm Stein's sentence.
 
 
 
 *
 Of the District of Rhode Island, sitting by designation